RECEIVED
FEB 05 2025
BY MAIL

United States

v.

Kenneth Simpson

Case Nos. 4:10cr169; 4:23cr297

## Reassertion of Alaska v Wright Motion

In July of 2023, I filed a motion under Alaska v Wright, 209 L Ed 2d 431 (2023) - commonly (but perhaps not required) treated as a §2255. Even under a generous reading of the Court's opinion, the motion was largely not resolved, despite the concession that the claims were, at least, procedurally correct. As the Wright opinion does not permit the Court's choice not to adjudicate the claims made, this is refiled.

Because these matters have been extensively briefed, and the Government has never disputed them after numerous chances, this refiling will largely rely on the previous pleadings.

## Brief Restatement of the Case

As a new judge has been appointed over this case, the relevant facts will be briefly recounted just to give background. In 2011, as the parties prepared to go to trial, Judge Sippel violated Rule 11 in pressuring me to plea. When I later challenged this on §2255, he refused to address whether that conduct was illegal, including several other uncontested violations. Subsequent efforts to get these issues resolved went unanswered. The 8th Circuit repeatedly explicitly refused to rule

an them.

When charged in 2023, I reraised these arguments challenging the original conviction, a tactic the Supreme Court explicitly approved in Wright. Magistrate Holmes clearly did not understand what the motion was or how to handle it, and even the Court disregarded his ruling. Ultimately, Judge White held that the claims had never been resolved (but one, which he misunderstood) then still failed to resolve them. The request for C.O.A. was never ruled on at all (or sent to the Court of Appeals).

This motion is hereby refiled.

## Argument

The following three claims were raised in the original §2255, and never resolved:

1) The plea was the result of threats and Rule 11 violations
2) The Government conceded that deleted files (on which they based their case) showed lack of intent/knowledge
3) Under Osborne v Ohio, 495 US 103 (1990), my accidental viewing of illegal pornography may not be criminalized
4) ~~Jurisdiction was tinanged in the §2255~~

As an additional matter the original claims relating to interstate commerce involved interstate movement from Texas to Missouri. This movement was completely disproved. The Court, on §2255, then changed the jurisdictional element, which may not be done, and refused to litigate the new element.

Judge White did not dispute these claims had been properly presented, but instead noted that Judge Sippel had addressed the jurisdictional element, and had upheld it on use of the Internet (as I said). The remaining three claims remained untouched (except for a comment that I did not correctly state Osborne). At face value, then, the Court's opinion required it to grant relief, not to dodge the questions once again.

Since the jurisdictional claim was addressed, we will start there and recount why relief is warranted on the merits of all four claims:

### The "Addressed" Jurisdiction

The indictment shows I was charged with moving files across a state line, from Texas to Missouri. Regardless of why (the interstate movement was disproved), the charge was upheld on §2255 on the basis of intrastate use of the Internet. The prior judge found that this occurred. Thus, the elements of the crime were changed, as Bousley forbids, to deny relief.

Far from disproving me, this is exactly what I said happened. It is not that the judge failed to adjudicate the claim, it's that he impermissibly changed my offense.

Whether we treat the jurisdictional element as truly jurisdictional, or merely an element of the offense (the Supreme Court has said it is both, Stirone v U.S., 361 US 212, 218-20 (1960)), we have a serious problem either way. No matter how we define this, it means I am

innocent of the federal crime I was charged with. If the claim is not jurisdictional, it is actual innocence. Neither is a minor claim.

The Constitutional problems this raises are legion and have been thoroughly explained, including but not limited to: constructive amendment of the indictment, ex post facto, denial of notice and opportunity to be heard, and, most importantly, the refusal to address the significant line of Supreme Court precedent explicitly stating that the "instrumentality" prong doesn't reach purely intrastate activities impermissibly broadens and/or disregards Supreme Court precedent in ways that raise serious concerns regarding federalism.

A person need not defend against every conceivable offense - just the one alleged in the indictment. If a defendant wins, even on §2255 in disproving even a single element of the crime, the Government doesn't get to change the charges. As that is what happened here, and Judge White explicitly found the accusations true, I was entitled to my relief.

## The Unadjudicated Claims

By ruling that one of the four claims had been addressed, the Court necessarily conceded that the others had not been. Moreover, while it takes a generous reading to call the finding that I "misunderstood Osborne" a ruling, it certainly does not resolve the claim made. It also seems to be a tacit admission that the remaining two claims were correct.

Since his findings demand relief and he didn't even issue an adjudication, we resubmit the following:

(1) The plea was a result of threats and Rule 11 violations

Since at least 1974, it has been forbidden for judges to participate in plea negotiations as it is inherently coercive and leads to the perception that a defendant needs to plea guilty, as noted in the Advisory Committee Notes to Rule 11. Even garden variety violations raise serious concerns about the fairness of the proceedings.

The participation of Judge Sippel at the pretrial conference was not just inherently coercive due to his position as Judge; it crossed the line into threats by any definition of the word. Any discussion of how sentencing will work if I was found guilty is, of course, inappropriate on its own. But Judge Sippel went far further, imagining even the prosecution objecting to the unnecessary harshness of my sentence. By pre-ruling on defense motions, stating he would reject them, no matter what they were, he didn't just convey a "sense" that the trial would be unfair; he explicitly promised it.

Even ignoring the incorrect discussion of Booker (it is irrelevant if generic judge so and so can ever find facts at sentencing, if you cannot find these specific facts here) were these comments Rule 11 violations or threats? He refused to answer, which the Commentary to Rule 11 itself states is a real danger in such cases, even in mine-run cases.

While the case was pending U.S. v Davila, 186 LEd 2d 139 (2013) was decided which held such participation, if followed

closely by a plea is presumptively prejudicial. It is likely involuntary, and 8th Circuit precedent strongly suggested it was a further violation for him to even hear the case, denying a neutral arbiter.

Refusing to address such a claim is bad enough the first time around; imposing a <u>new</u> penalty while acknowledging that the plea has still not validated is unconscionable.

## (2) Lack of Knowledge

In the porn context, "knowledge" is the difference between innocent conduct and the commission of a crime. <u>U.S. v. X-Citement Video, Inc.</u>, 513 US 64, 72-73 (1994). At every stage prior to the plea, I directly questioned the propriety of basing the entire case on deleted and cancelled files. Even ignoring my personal statements that the files were deleted because I wasn't looking for them, common sense would seem to dictate that deleting files is the exact opposite of either knowing receipt or possession. The fact that the Government itself admitted that it was unlikely to get a conviction without showing files that were rejected <u>should have been</u> a sign the conviction was infirm.

Later in the §2255, the Government would eventually admit as much - people don't expect those actively looking for child pornography to delete it. "Everybody knows" collectors <u>don't delete their files!</u> This means, in common English, the very fact that one deletes files means they are likely not guilty. The 404(B) files were a deliberate attempt to mislead the jury and get them to conviction on an improper basis, that

is an emotional one. Such a use of 404(B) is illegitimate. Old Chief v. U.S., 519 US 172, 181 (1997); Huddleston v. U.S., 485 US 681, 691 (1988).

Deliberately distorting the evidence to make the trier of fact come to an incorrect conclusion is not just a massive violation of due process, it is a crime. Since the Government has admitted the point that it was aware the deletion of these files was evidence no crime was committed, this case never should have been charged.

(3) §2252 is Unconstitutional as Applied

This Court has emphasized time and again how child pornography is "a special case" because "the market for child pornography [is] 'intrinsically related' to the underlying abuse" and thus "an integral part of the production of such materials, an activity illegal throughout the nation." Counterman v. Colorado, 216 L.Ed.2d 775, 801 n.2 (2023)(citing Osborne v. Ohio, 495 US 103, 108-10 (1990) and collecting cases). For over 30 years, the Supreme Court has made clear that child pornography possession can be made criminal because those who purchase these materials provide motive to make and reward to distribute files made by abusing children. Much like those who purchase stolen goods, punishing the receiver helps remove the profit motive, Bartnicki v. Vopper, 532 US 514, 550 (2001). Absent this rationale, no other justification will do, Ashcroft v. Free Speech Coalition, 535 US 234, 250 (2002).

Yet, I participated in no "market", commercial or otherwise.

"Market deterrence" makes no sense in cases where there is no profit motive, or where punishing the receiver will not deter the original crime. Bartnicki, at 530-31. Regardless of the viewers' subjective intent, any non-commercial encounters with illegal porn provably have no connection to the underlying harm. It is no different than viewing other crime scene photos.

Indeed, the Congressional findings on the "market" from 2005 and 2008 don't just call into question the culpability of such "offenders"; the easy and ubiquitous access of illicit files means that the continued existence of §2252(d)(§2252A(d)) will inevitably lead to the conviction of obviously innocent people. If child pornography was literally everywhere 20+ years ago, showing that a defendant viewed such porn doesn't prove anything. It doesn't show he was deliberately searching it out, enjoying it, or keeping it. In most cases today, like mine, the government must use deleted files - which it admits are evidence of lack of interest - or it won't convict.

In light of this, Judge White's contention that I "misunderstood" Osborne is absurd, and, not surprisingly, received no explanation, because it is plainly wrong. It was exactly the sort of "pro forma denial bereft of any consideration" explicitly forbidden by precedent. Dansby v. Hobbs, 691 F3d 934, 936 (8th, 2012).

But let's pretend that I have misunderstood Osborne, despite the massive evidence to the contrary; so what? Does this negate the risk of illegitimate convictions of innocent people? Clearly not. In 2011/12, the Sentencing Commission was estimating 1/3 of defendants were clearly

not pedophiles and not interested in children. Does it change that the viewer has no connection to the underlying harm? Not at all; the Supreme Court noted in *Paroline* that it was a legal fiction to claim any viewer caused damage to any victim. So any "misunderstanding" hardly affects the legitimacy of the argument; it just means its based in all the sources except *Osborne*.

So, the refusal to address the entirety of the claim because I misunderstood one case was a clear abuse of discretion. And, as shown before, given that this "misunderstanding" has been shared by numerous professionals writing legal articles, including former Federal Prosecutor Andrew McCarthy in defending now Justice Jackson prior to her confirmation hearings, the dismissive belittling of my "understanding" of *Osborne* never had any basis in reality.

## Conclusion

The continued refusal to address these undisputed and unadjudicated claims over a decade is not permitted under law. Belief is not just warranted, it is required.

Kenneth Simpson
1/24/25

Kenneth Simpson #37171-044
Medical Center for Federal Prisoners
P.O. Box 4000
Springfield, Missouri 65801-4000

RECEIVED
FEB 05 2025
BY MAIL

Legal Mail

⇔37171-044⇔
E District Court
111 S 10TH ST
Saint Louis, MO 63102
United States

63102-112894



U.S. Medical Center for Federal Prisoners
P.O. Box 4000
Springfield, MO 65801

**The enclosed letter was processed** through **special** mailing procedures for forwarding to you. **The letter has been** neither **opened nor inspected. If the writer** raises a question or problem of which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer **encloses correspondence** for forwarding to **another address**, please return the enclosure **to the above address.**

JAN 28 2025